OPINION OF THE COURT
Bentley Kassal, J.
FACTS
Plaintiff, while at defendant St. Charles Hospital (St. Charles), was examined and found to have a carcinoma. Subsequently, at the defendant Memorial Hospital (Memorial), there was a similar finding which proved to be erroneous. These findings were investigated by both hospitals.
ISSUE
Plaintiffs seek discovery and inspection of (1) postincident statements and investigative reports, sometimes called “complication reports”, prepared by or for the two defendant hospitals relating to patient plaintiff, and (2) records of “peer review committee” investigations relating to this plaintiff at both hospitals.
DISCUSSION
Subdivision 3 of section 6527 of the Education Law prohibits disclosure under CPLR article 31 of the “proceedings [and] records relating to performance of a medical *1014 review function” with the exception of “statements made by any person in attendance at such a meeting who is a party to an action * * * the subject matter of which was reviewed at such meeting.” (Emphasis added.)
Discovery of the postincident statements and investigative reports (“complication reports”) sought by plaintiffs is not proscribed by subdivision 3 of section 6527 of the Education Law which is carefully limited in scope so as to cover only “medical review functions” performed by a review committee. The “records” of the “proceedings” of medical review committees are the subject matter of this section. Defendants, in opposing disclosure of the “complication reports” bear the burden of establishing that the preparation of these reports involves the performance of a “medical review function”. The defendants have failed to define precisely what a “complication report” is and, thus, have not sustained their burden to prevent discovery.
St. Charles states that a “diligent search” has failed to uncover any “incident reports citing to the plaintiff Diane Weiner” and that the “peer review committee” investigations are not discoverable. Memorial maintains that “[n]o investigative reports, ‘complication reports’, or peer review reports were prepared at memorial hospital with regard to the treatment of Diane Wiener” and even if they existed, they would not be discoverable.
Plaintiffs, however, do describe the “complication reports” they seek in these terms:
“The plaintiff was discharged from the defendant Memorial on October 11, 1980 believing that she had cancer. Subsequent to her discharge, investigations were apparently undertaken at the two hospitals in an effort to reconcile the apparently conflicting pathological studies and determine whether or not the plaintiff had ever suffered from adenocarcinoma. Annexed hereto and made a part hereof as Exhibit E is a copy of the follow-up note in the Memorial record prepared by Dr. Martini on November 24, 1980 which describes the subsequent investigation. Dr. Martini’s note states in pertinent part:
“ ‘This patient had undergone a right thoracotemy and lobectomy with a preoperative diagnosis of adenocarci *1015 noma in the right upper lobe bronchus * * * There was however no evidence of carcinoma. This has since been pursued and clarified that the submitted material with the diagnosis of carcinoma had been mixed up with some other patient in her hospital. This information was clarified in a retrospective investigation with the hospital where her studies had originated and on the coordination of Dr. Henry.’” (Emphasis added.)
Subdivision 3 of section 6527 has been strictly construed in the few decisions that have interpreted it. For example, it has been held that a hospital’s credentials committee performed a “medical review function”, so that a plaintiff was precluded from questioning nonparty deponents concerning this committee’s proceedings. (Larsson v Mithallal, 72 AD 2d 806.) “The statute was obviously intended to protect members of a medical committee engaged in reviewing the actions of a treating physician.” (Pindar v Parke Davis & Co., 71 Misc 2d 923, 924; italics supplied.)
CONCLUSION
St. Charles and Memorial have failed to sustain their burden of establishing that the “retrospective investigation” conducted jointly by Drs. Martini and Henry represents their having “performed a medical review function” within the meaning of the Education Law. Absent such proof, the “complication reports” sought by plaintiffs are not immunized from disclosure under that section.
Therefore, since these reports are obviously relevant and material to this lawsuit and are not otherwise privileged, plaintiffs’ motion is granted as to these “complication reports”, copies of which defendants shall furnish within 30 days of service of a copy of this order with notice óf entry.
On the other hand, the records of the “peer review committee” investigations are not discoverable. (See Lenard v New York Univ. Med. Center, 83 AD2d 860, 861.) However, plaintiffs have indicated that, “[t]he defendant hospitals have stated for the record that there was no ‘peer review’ within the meaning of § 6527 of the Education Law concerning Diane Wiener’s hospitalizations at the defendants St. Charles and Memorial. Thus, any discussion of *1016 discovery of ‘peer review’ committee minutes is moot.” Apparently, plaintiffs now only seek any “memoranda concerning the ‘retrospective investigation’ conducted by the two defendant hospitals” (i.e., “complication reports”), and not any “peer review committee” reports. Therefore, the portion of plaintiffs’ motion seeking discovery of these “peer review” records is denied.